**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**CENTRAL DIVISION**

| | | |
|---|---|---|
| ROBERT A. MYERS AND KIMBERLY A. MYERS,<br><br>Plaintiffs,<br><br>vs.<br><br>KNS DEVELOPMENT CORP., a Missouri Corporation, and KEVIN SHORT and NATALIE SHORT,<br><br>Defendants. | ) | No. 2:17-cv-04076-NKL |

**ORDER**

Defendants KNS Development Corp. ("KNS"), Kevin Short, and Natalie Short move pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b) to dismiss the complaint by plaintiffs Robert A. Myers and Kimberly A. Myers for failure to state a claim and for failure to plead with sufficient particularity. For the reasons set forth below, the motion is granted in part and denied in part.

**I. Standard on Motion to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) requires the dismissal of a complaint that fails to plead facts sufficient to state a plausible claim upon which relief may be granted. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In determining whether a complaint alleges sufficient facts to state a plausible claim to relief, the Court accepts all factual allegations as true. *See Great Plains Trust Co. v. Union Pac. R.R. Co.*, 492 F.3d 986, 995 (8th Cir. 2007). If the facts alleged in the complaint are sufficient for the court to draw a reasonable inference that the defendant is

liable for the alleged misconduct, the claim has facial plausibility and will not be dismissed. *See Iqbal*, 556 U.S. at 678.

## II. Alleged Facts

The Myers, a husband and wife from Nebraska, allege that on June 8, 2015, they entered into a contract for Defendants to construct a vacation home upon the Myers' property in Camden County, Missouri. Work at the site commenced on June 30, 2015.

The contract states that time is of the essence, and KNS and Kevin Short represented that the vacation home would be completed by June 2016. However, the home was not finished by June 2016 as promised. KNS and Kevin Short then repeatedly promised the Myers that completion was imminent. In late 2016, however, construction of the home materially slowed.

On January 26, 2017, Kimberly Myers received a call from a subcontractor, Kirk's Custom Woodworking ("Kirk's"), complaining that it had not been paid since November 2016 for services performed and material supplied for construction of the Myers' vacation home. Kimberly Myers replied that the Myers had made multiple payments to KNS and/or Kirk's and that she had received lien waivers in exchange. Kirk's stated that it had never executed or delivered those lien waivers.

Kimberly Myers immediately notified Central Bank of the Lake of the Ozarks (the "Bank"), which was financing the construction, that she suspected that KNS and Kevin Short were defrauding the Myers. The Bank in turn discussed the Myers' complaints with Kevin Short, who allegedly admitted to forging other persons' names on lien waivers he provided to the Myers.

That same day, Kevin Short visited the Myers and explained that he was "in big trouble." He confessed that, although a January 2017 invoice indicated that he had paid certain

subcontractors, he in fact had not done so. He admitted that he had forged multiple lien waivers that purported to be from various subcontractors, suppliers, and laborers. He begged the Myers not to prosecute him, promising in exchange to pay back all of the funds that he had obtained under false pretenses from them and from their construction loan account at the Bank.

The next day, January 27, 2017, Kevin Short met with the Myers and a representative of the Bank. Kevin Short admitted that, in order to improperly withdraw funds from the Myers' construction loan account with the Bank, he (i) had submitted to the Bank completely fabricated requests for payments; (ii) had altered other, legitimate payment requests from third parties in order to line his own pockets; and (iii) had forged lien waivers he provided to the Myers. Kevin Short stated that his wife, Natalie Short, was aware of this conduct. Kevin Short provided the Bank with a list of subcontractors and suppliers whom, despite his prior representations to the contrary, he had not paid.

After the Myers and CBOLO contacted the various subcontractors and suppliers identified by Kevin Short as having not been paid, they learned that Kevin Short had improperly requested $446,077.85 in improper payments from the Myers' funds.

The Myers cancelled the construction contract with KNS and hired a different company to complete their vacation home. The new construction company advised the Myers of numerous construction defects and other problems created by KNS. Constructions permits had expired, and procuring new permits would require new surveys of the property. The home's placement violated setback requirements and would require the Myers to obtain a variance from the Camden County government. The rear deck for the home lacked a structural pier, and KNS had used wood rather than concrete footings for the structure. KNS neglected to arrange inspection of the gas lines by the local fire department before installing flooring, and completing

that inspection in the partially-constructed home required removing and then replacing the flooring KNS had installed. The residential elevator shaft was not built to the manufacturer's specifications and would require substantial corrective efforts. Fixing these and other unspecified deficiencies in KNS's construction has cost the Myers over $60,000 to date.

The Myers since have learned that the Defendants had been charging the Myers a builder's commission of 10% despite the fact that the construction contract provided for a commission rate of 8%.

On or about February 1, 2017, the defendants paid $50,000 to the Myers and promised to repay within a "few days" the remaining amounts due. On or about February 8, 2017, Natalie Short and her father, Phil Short, advised the Myers and a representative of the Bank that they would pay all the amounts due to the Myers and would compensate them for all other damages and losses. On February 9, 2017, Phil Short paid the Myers $325,000. Between that date and April 10, 2017, Defendants made additional payments to the Myers totaling $92,029.03.

The Myers claim that, even after offsetting the amounts paid by the defendants to date, they have been damaged by no less than $84,000.

Construction of the Myers' vacation home has not yet been completed.

The Myers assert five claims against KNS, Kevin Short, and Natalie Short: breach of contract, fraud, constructive fraud, negligent misrepresentation, and negligent and defective workmanship.

## III. Discussion

Defendants move to dismiss the complaint for failure to state a claim and for failure to plead with sufficiently particularity. The five counts in the complaint are for breach of contract, fraud, constructive fraud, negligent misrepresentation, and negligent and defective workmanship.

#### a. Breach of Contract

Defendants make two arguments in moving to dismiss the Myers' claim for breach of contract. First, Defendants argue that although the Myers assert the claim against all three defendants, the contract is between the Myers and KNS alone. Second, the Defendants argue that Plaintiffs fail to identify the portions of the contract that were breached and when and how they were breached.

##### i. Breach of Contract Claim Against the Shorts

Defendants are correct that a breach of contract claim may not be brought against non-parties to a contract. *See, e.g., Kahn v. Prahl*, 414 S.W.2d 269 (Mo. 1967) ("[O]ne not a party to a contract is not bound thereby and is not liable for breach of a contract to which he is not a party.").[1] The contract at issue here states that it is between "Bob and Kim Myers" on one hand and "KNS Development Corp." on the other. Neither Kevin Short nor Natalie Short is listed as a party. Although Kevin Short is listed in the signature block for KNS, he is so listed in his capacity as "[o]wner" of KNS. Indeed, the Complaint itself appears to concede that the contract was with KNS. *See* Complaint, ¶¶ 22 and 39 (referring to "the Construction Contract with KNS"). Because it is plain from the face of the contract that neither Kevin Short nor Natalie Short is a party, the Myers' breach of contract claim against the Shorts, individually, must be dismissed.

##### ii. Whether Plaintiffs Have Adequately Pleaded Breach of Contract

Defendants argue that the breach of contract claim should be dismissed because the Myers failed to identify the particulars of the alleged breach. Unlike claims of fraud or mistake,

---

[1] The contract is attached as Exhibit 1 to the Complaint and therefore the Court may consider it in deciding Defendants' motion to dismiss. *See Neubauer v. FedEx Corp.*, 849 F.3d 400, 403 (8th Cir. 2017) (considering "documents embraced by the pleadings or attached to the complaint as exhibits" in affirming dismissal of complaint).

however, claims for breach of contract are not subject to a heightened pleading standard. To survive a motion to dismiss, the complaint need allege "only enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007).

The Myers have adequately pleaded breach of contract against KNS. The contract, which, as an exhibit, is considered part of the Complaint, provides that KNS was to "supervise and direct" the construction of the Myers' vacation home "using its best skill and attention." Exhibit 1 to the Complaint, Article 2, Section B. KNS was to "be solely responsible for all construction means, methods, techniques and procedures" and "coordinate all portions of" the construction. *Id.* KNS was to provide all material, equipment, and services necessary to complete the construction. *Id.*, Section C. KNS was to submit to the Myers monthly itemized payment applications for labor and materials, attaching a copy of the receipts and invoices to be paid. *Id.*, Article 3, Section 2(i). The Myers were to pay "the total amount of the receipts and invoices" for these items. *Id.*, Article 2, Section C. KNS was to be responsible for ensuring that the construction "complie[d] with all building codes and requirements." *Id.*, Section F. KNS, as contractor, was to receive 8% "of the total receipts and invoices stated in the monthly Contractor's Application for Payment." *Id.*, Article 3, Section 2(ii). KNS was to "promptly correct all defective work and all work failing to conform to the contract documents . . . ." *Id.*, Article 6, Section A. The contract specified that time was of the essence. *See id.*, Article 3, Section 4.

The Complaint alleges that the construction work performed by KNS was defective, that the building did not comply with applicable codes or regulations, that KNS charged the Myers a 10% commission, that KNS submitted falsified invoices for materials and services, and that the construction was delayed unreasonably. The alleged conduct arguably violates the contractual

provisions referenced above. The Myers therefore have stated a claim against KNS for breach of contract.

### b. Fraud and Constructive Fraud

Defendants move to dismiss the Myers' fraud and constructive fraud claims on the ground that they are not stated with adequate particularity. Federal Rule of Civil Procedure 9(b) requires one claiming fraud to "state with particularity the circumstances constituting fraud or mistake." The Court "must interpret the requirements of Rule 9(b) in harmony with the principles of notice pleading." *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 920 (8th Cir. 2001) (quotation marks and citation omitted). The heightened pleading standard for fraud "simply necessitates a higher degree of notice, enabling the defendant to respond specifically, at an early stage of the case, to potentially damaging allegations . . . ." *Id.* The complaint should "identify the who, what, where, when, and how of the alleged fraud." *United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006) (quotation marks omitted).

Counts II and III of the complaint present three theories of fraud: (i) fraud through false statements of present intent with respect to representations and warranties in the construction contract; (ii) fraud through the submission of inflated or fabricated requests for payment to the Myers or the Bank; and (iii) fraud through the false promise to repay the Myers for damages arising from defendants' conduct.

#### i. Fraud in Connection with the Construction Contract

The Myers allege that representations and warranties in the construction contract were false when made. *See* Complaint, ¶¶ 64-69. However, the Myers fail to identify any specific misrepresentations in the contract. They also fail to specify who made the alleged misrepresentations. Indeed, although the Myers claim that all of the defendants should be liable

for unspecified misrepresentations in the complaint, there is no allegation in the complaint that Natalie Short made any statements at all to the Myers prior to their discovery of the purportedly falsified payment requests. The Myers' allegations of fraud relating to the construction contract when it was made are conclusory and do not satisfy the heightened pleading standard of Rule 9(b). Accordingly, the fraud claims concerning the construction contract when it was made are dismissed without prejudice.

**ii. Fraud in Connection with Payment Requests**

The Myers allege that Kevin Short, acting on behalf of KNS and with the knowledge of Natalie Short, intentionally submitted to the Bank a number of requests for payments by the Myers that were either falsely inflated or completely fabricated in order to misappropriate money from the Myers' construction account. *See* Complaint, ¶¶ 29-38. Although the complaint does not specify the dates on which Kevin Short through KNS purportedly submitted the falsified requests for payment, it specifies the dates on which he allegedly admitted to having submitted multiple falsified payment requests.[2] It also sets forth a "reasonable time frame during which the representations occurred . . . ." *Lemery v. Duroso*, No. 09-0167, 2009 WL 1176269, at *4 (E.D. Mo. Apr. 30, 2009); *see* Complaint, ¶¶ 29 and 34. The pleadings are sufficiently particular to put Kevin Short and KNS on notice with respect to the supposedly falsified payment requests.

With respect to Natalie Short's involvement with the falsified payment requests, however, the complaint fails to state a claim for fraud. There is no indication that she made any representation at all in connection with any payment request, and the Myers have presented no

[2] Because the Myers allege that Kevin Short made the false statements to the Bank, rather than to the Myers directly, additional particularity with respect to the dates of the alleged misrepresentations is not required at this stage.

authority that would permit one with knowledge of a spouse's false representation to be held liable for fraud.

### iii. Fraud in Connection with Purported Promise to Repay

According to the complaint, both Kevin Short and Natalie Short were untruthful when they promised to pay for all damages sustained by the Myers as the result of the defendants' conduct. *See* Complaint, ¶¶ 63 and 76. However, the Myers fail to identify any falsity in the promises. They do not allege that the Shorts never intended to pay them. Indeed, the Myers admit that, following their promises to pay, the Defendants made multiple payments to the Myers. *See* Complaint, ¶¶ 42-46. There is, in short, nothing outside of conclusory statements to suggest that the defendants' purported promises to pay for the alleged damages to the Myers were false when made. As such, the Myers' fraud claims concerning the defendants' purported promises to pay must be dismissed. *See BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007) ("Conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule.").

### c. Negligent Misrepresentation

The Myers' negligent misrepresentation claim concerns the falsified payment requests. Defendants argue that the Myers cannot state a claim for negligent misrepresentation because the complaint alleges that the defendants *knew* that the falsified requests for payment at issue were not true, and only a defendant ignorant of whether a representation is true or false may be held liable for negligent misrepresentation. In *City of St. Joseph, Mo. v. Sw. Bell Tel.*, 439 F.3d 468, 478 (8th Cir. 2006), the Eighth Circuit held that the elements of negligent misrepresentation under Missouri law are: "(1) the speaker supplied information in the course of his or her business because of some pecuniary interest; (2) due to the speaker's failure to exercise

reasonable care or competence in obtaining or communicating this information, the information was false; (3) the speaker intentionally provided information for the guidance of a limited group of persons in a particular business transaction; (4) the listener justifiably relied on the information; and (5) as a result of the listener's reliance on the statement, the listener suffered a pecuniary loss." Intentional misrepresentation certainly constitutes a failure to exercise due care, and subsumes, and may be pleaded in the alternative to, allegations of negligent misrepresentation.[3]

Defendants cite *Colgan v. Washington Realty Co.*, 879 S.W.2d 686, 689 (Mo. App. 1994), for the proposition that "[a] negligent misrepresentation claim is premised upon the theory that the speaker believed that the information supplied was correct, but was negligent in so believing." However, that decision concerned a motion for summary judgment, where the court was required to determine whether any factual disputes remained. In fact, the court concluded that there was a genuine dispute as to the knowledge of certain defendants, so the question of whether the defendants were liable for fraud or negligent misrepresentation could not be decided at the summary judgment stage. This case, in contrast, is nascent. The parties have yet to conduct discovery. It would be premature to dismiss the negligent misrepresentation claim at this stage.

---

[3] The fact that the Myers allege that the defendant knew the representations at issue were false is of no consequence at this stage in the litigation because plaintiffs are permitted to plead facts and claims in the alternative. *See* Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically."); *see also Williams v. Finance Plaza, Inc.*, 78 S.W.3d 175, 186 (Mo. 2002) (noting that plaintiff had pleaded fraud and negligent misrepresentation based on the same facts, and all of the claims were submitted to the jury); *Superior Edge Inc. v. Monsanto Co.*, 44 F. Supp. 3d 890, 903 (D. Minn. 2014) (applying Missouri law) ("[D]ismissal is not warranted even though Monsanto's claims for fraudulent and negligent inducement are based on the same universe of statements and omissions."). Pleading in the alternative in this manner does not violate Federal Rule of Civil Procedure 11.

In deciding Defendants' motion to dismiss, the Court is tasked not with fact-finding, but with determining whether the plaintiffs' allegations are plausible. The Court finds that it is plausible that each of the defendants failed to exercise reasonable care with respect to the submission of allegedly falsified requests for payments. The Myers therefore have adequately pleaded negligent misrepresentation. The motion to dismiss Count IV is denied.

**d. Negligent and Defective Workmanship**

Defendants argue that the Myers fail to allege any specific defects in Defendants' work, but the complaint alleges various specific defects in the construction. These defects include failure to comply with set-back requirements, failure to build an elevator shaft to manufacturer specifications, failure to equip a deck with a structural pier, the use of wooden rather than concrete footings for the deck, and failure to have the gas lines inspected before installing flooring, requiring a new contractor to rip up the floors to complete the inspection. *See* Complaint, ¶¶ 40(A)-(F). The complaint alleges facts sufficient to state a plausible claim for negligent and defective workmanship. The motion to dismiss Count V is denied.[4]

---

[4] On reply, the defendants argue also that the lack of privity of contract between the Myers and the Shorts precludes the Myers' claim for negligent and defective workmanship. Because this argument was raised for the first time on reply, the Court will not address it.

## IV. CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is granted in part and denied in part. Count I is dismissed with prejudice as against Kevin Short and Natalie Short. Counts II and III are dismissed without prejudice as to Natalie Short, and dismissed without prejudice as to KNS and Kevin Short insofar as they relate to the construction contract or promises made by the Shorts to repay the Myers for damages.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: September 21, 2017
Jefferson City, Missouri